IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| YIFAN SHEN, ZHIMING XU, XINXI WANG, YONGXIN LIU, and MULTI-CHOICE REALTY, LLC,<br><br>    *Plaintiffs*,<br><br>v.<br><br>WILTON SIMPSON, in his official capacity as Florida Commissioner of Agriculture, MEREDITH IVEY, in her official capacity as Acting Florida Secretary of Economic Opportunity, PATRICIA FITZGERALD, in her official capacity as Chair of the Florida Real Estate Commission, R.J. LARIZZA, in his official capacity as State Attorney for the 7th Judicial Circuit, MONIQUE WORRELL, in her official capacity as State Attorney for the 9th Judicial Circuit, and KATHERINE FERNANDEZ RUNDLE, in her official capacity as State Attorney for the 11th Judicial Circuit,<br><br>    *Defendants*. | Case No. 4:23-cv-208-AW-MAF |

**MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE BY RACIAL JUSTICE CENTERS, AFFINITY BAR AND PROFESSIONAL ASSOCIATIONS, AND CIVIL RIGHTS ADVOCACY ORGANIZATIONS IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

    The below coalition of racial justice centers, affinity bar and professional associations, and civil rights advocacy organizations (collectively the "Amici"),

respectfully move for leave to file a brief as amici curiae (the "Brief") in support of the Plaintiffs' Motion for Preliminary Injunction. Amici's proposed Brief is attached as Exhibit A, and Amici's corporate disclosure statements are attached as Exhibit B.

Although the Federal Rules of Civil Procedure do not specifically address the filing of amicus curiae briefs at the district court level, "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006); *see Lefebure v. D'Aquilla*, 15 F.4th 670, 674-76 (5th Cir. 2021) (finding "strong (but fair) advocacy on behalf of opposing views promotes sound decision making," courts would be "well advised to grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not [state their interest in the case]").

In determining whether to grant leave to file an amicus curiae brief, judges of this Court have considered: (1) amici's experience and qualifications; (2) the relevance of the amicus curiae brief to the matter; (3) whether the case is of "general public interest"; (4) whether the case is of "particular interest to the [amici]"; and (5) whether the "case concerns constitutional rights." Order Granting Motion to Appear as Amicus Curiae 2, *Madera v. Detzner*, No. 1:18-cv-152-MW/GRJ (N.D. Fla. Aug. 23, 2018), ECF No. 31 (Walker, C.J.); *see* Order Granting Motion for Leave to File Amicus Brief, *M.A., et al. v. Fla. State Bd. of Educ., et al.*, No. 4:22-cv-134-AW-MJF (N.C. Fla. Dec. 23, 2022), ECF No. 147 (Winsor, J.).

## INTEREST OF AMICI CURIAE

Amici are renowned racial justice centers, affinity bar and professional associations, and civil rights advocacy organizations with knowledge and expertise in addressing historical, empirical, and pervasive manifestations of racism and inequality in the legal system and society.

*Racial Justice Centers*[1]

**Fred T. Korematsu Center for Law and Equality at Seattle University School of Law**

The Fred T. Korematsu Center for Law and Equality at Seattle University School of Law ("Korematsu Center") is a non-profit organization based at the Seattle University School of Law. The Korematsu Center works to advance justice through research, advocacy, and education. Inspired by the legacy of Fred Korematsu, who defied military orders during World War II that ultimately led to the unlawful incarceration of 120,000 Japanese Americans, the Korematsu Center works to advance social justice for all. The Korematsu Center has a special interest in addressing government action targeted at classes of persons based on race or nationality. Drawing on its experiences and expertise, the Korematsu Center seeks to ensure that courts understand the historical—and, at times, profoundly unjust— underpinnings of arguments asserted to support the exercise of such unchecked

---

[1] The views represented by the Amici Racial Justice Centers do not represent the views of their home institutions.

executive power. The Korematsu Center does not, in this brief or otherwise, represent the official views of Seattle University.

**Center for Immigration Law, Policy, and Justice at Rutgers Law School**

Established in 2018, the Center for Immigration Law, Policy, and Justice ("CIPLPJ") at Rutgers Law School explores contemporary and historical immigration and citizenship laws to better understand the complex ways that law and society determine who belongs in the United States. Through interdisciplinary scholarship, legal, policy and advocacy-based initiatives and public engagement, the Center supports the work of faculty, scholars and students within the law school and the broader Rutgers University Newark community who seek to understand immigration and citizenship law from an interdisciplinary perspective. By examining immigration laws, policies, regulations and practices from different views, including law, history, arts, culture, media, economics, political science, sociology and other fields, the Center aims to provide a broader understanding of the body of laws that determine who may enter, reside and become full members of the United States polity and the rights to which they are entitled while they are within this country. Importantly, the CILPJ advocates for and supports legal, policy and advocacy initiatives that protect the due process and equal protection rights of immigrants and their families.

**Aoki Center for Critical Race and Nation Studies at UC Davis School of Law**

The Aoki Center for Critical Race and Nation Studies at UC Davis School of Law ("Aoki Center") is a program of the University of California, Davis, School of Law. It was formed to critically examine legal issues through the lens of race, ethnicity, citizenship, and class. The Aoki Center seeks to advance civil rights, critical race theory, and immigration issues through furthering scholarly research on the intersection of race and the law, and thus has a significant interest in the outcome of the instant dispute.

**LLS Anti-Racism Center of LMU Loyola Law School**

The LLS Anti-Racism Center ("LARC") of LMU Loyola Law School, aims to engage, confront and dismantle individualized and structural racism. LARC connects legal scholarship and policy research, academic and policy forums, and the on-the-ground clinical work to challenge and transform legal regimes that reify racism and inequality. Through its multiple lawyering strategies, LARC seeks to advance equity and democracy under the law. LARC therefore, seeks to protect historically subordinated groups, including noncitizens of color, from exclusionary and discriminatory laws, policies and practices.

### Center on Race, Inequality, and the Law at New York University School of Law

The Center on Race, Inequality, and the Law at New York University School of Law (the "CRIL") works to highlight and dismantle structures and institutions that have been infected by racial bias, plagued by inequality, and visited harm upon marginalized groups, particularly within communities of color. CRIL fulfills its mission through public education, research, advocacy, and litigation. It has a special interest in ensuring that courts exercise their broad remedial powers to strike down racially discriminatory laws and vindicate the constitutional and statutory rights of those subjected to harm at the hands of government.

### Boston University Center for Antiracist Research

The Boston University Center for Antiracist Research (the "Center") is a nonpartisan, nonprofit university-based center that seeks to facilitate antiracist social change through research, policy, narrative, and advocacy initiatives. The Center's animating goal is to eliminate racism through a rigorous, research-based, and integrative approach. Accordingly, the Center has a keen interest in challenging discriminatory property restrictions targeting people based on race or national origin. The Center joins this brief to provide critical context regarding the use of alien land laws as mechanism of anti-Asian racism and exclusion. The Center does not, in this brief or otherwise, represent the official views of Boston University.

**Center for Civil Rights and Racial Justice at the University of Pittsburgh School of Law**

The Center for Civil Rights and Racial Justice at the University of Pittsburgh School of Law ("CCRJ") aims to address systemic disparities through a legal contextual lens. The mission of CCRJ is to facilitate community-engaged teaching, research, and service and will serve as a hub and visible manifestation of the Law School's commitment to legal issues regarding these issues. CCRJ serves as a convener of efforts to advance constitutional, legislative, and regulatory protections of civil rights at the federal, state, and local levels. CCRJ works closely with community partners, to serve as both a laboratory and a hub for researching and recommending solutions to be adopted by local and national communities facing systemic disparities in police violence, prisons, housing, education, and health.

*Affinity Bar/Professional Associations*

**Asian Pacific American Bar Association of Tampa Bay**

The Asian Pacific American Bar Association of Tampa Bay ("APABA Tampa") is a voluntary bar association of attorneys, judges, and law students, who serve the Greater Tampa Bay area. APABA Tampa is an affiliate member of NAPABA, which represents the interests of over 60,000 Asian Pacific American ("APA") attorneys, judges, and law students, working in solo practices, small and large firms, corporations, nonprofit and legal services organizations, law schools,

and government agencies. APABA Tampa seeks to carry out the mission statement of NAPABA – promoting "justice, equity and opportunity for Asian Pacific Americans" and fostering "professional development, legal scholarship, advocacy and community involvement." To further that, APABA Tampa issued a joint statement with NAPABA and affiliated Asian Pacific American bar associations in Florida to oppose the provisions of the Florida Senate Bill 264 or "Conveyances to Foreign Entities Law."

### Conference of Asian Pacific American Law Faculty

The Conference of Asian Pacific American Law Faculty ("CAPALF") was formed in 1994 with the first national gathering of Asian Pacific American law teachers. The organization has since become a nonprofit corporation with a mission to contribute to the well-being of APA communities, to create a professional network, and to host conferences. CAPALF encourages the participation not only of Asian Pacific Americans, but all those whose work relates to issues significant to APA communities. As a group that was subjected to discriminatory immigration restrictions, naturalization laws, and alien land laws, often based on the perceived threat they posed to certain communities, states, and the nation, Asian Pacific Americans are in a unique position to offer our historical experience as an object lesson to inform the courts and the public about the dangers posed by laws that single out persons from certain countries for discriminatory treatment.

**Hispanic National Bar Association**

The Hispanic National Bar Association ("HNBA") is a non-profit organization that represents the interests of Hispanic legal professionals in the United States and its territories. HNBA has members across the U.S., including in Florida. HNBA is committed to advocacy on issues of importance to the Hispanic community living in the United States.

**National Asian Pacific American Bar Association**

The National Asian Pacific American Bar Association ("NAPABA") is the nation's largest Asian Pacific American membership organization, representing the interest of 60,000 attorneys, judges, law professors, and law students. NAPABA serves as the national voice for the Asian Pacific American legal profession. It promotes justice, equity, and opportunity for Asian Pacific Americans and fosters professional development, legal scholarship, advocacy, and community involvement toward achieving those goals.

**South Asian Bar Association of North America**

The South Asian Bar Association of North America ("SABANA") is an international bar association that seeks to strengthen the rapidly growing South Asian legal community with a recognized and trusted forum for professional growth and development, while also promoting the civil rights and access to justice for the South Asian community and the community-at-large. More specifically, SABANA

strives to combat efforts to limit and marginalize South Asian and other immigrant communities.

*Civil Rights and Other Advocacy Organizations*

**Asian Americans Advancing Justice - Asian Law Caucus**

Asian Americans Advancing Justice - Asian Law Caucus ("ALC") is a nonprofit civil rights organization committed to the pursuit of justice, serving low-income, immigrant, and underserved Asian American and Pacific Islander and Arab, Middle Eastern, Muslim and South Asian communities. ALC has a longstanding record of protecting those immigrant communities targeted by discriminatory policies justified under national security concerns, including the Muslim Ban and the China Initiative.

**Asian Americans Advancing Justice – Atlanta**

Asian Americans Advancing Justice-Atlanta ("Advancing Justice-Atlanta") is the first nonprofit legal advocacy organization dedicated to protecting the civil rights of Asian Americans, Native Hawaiian, Pacific Islander and Arab, Middle Eastern, Muslim, and South Asian communities in Georgia and the Southeast. It works to promote equity, fair treatment, and self-determination for all communities of color.

**Asian American Women's Political Initiative**

The Asian American Women's Political Initiative ("AAWPI") is a non-profit organization based in Boston, Massachusetts that works to ensure that AAPI women

have a voice in our democracy. After the 2021 mass shooting of 6 AAPI women in Georgia, AAWPI realized how urgent it was to change the invisibility that leaves us so vulnerable to the anti-Asian violence we still see today. In response to such violence, AAWPI scaled nationally and are building a first-of-its kind political pipeline to activate, mobilize and elevate AAPI women.

**Asian Law Alliance**

The Asian Law Alliance ("ALA"), founded in 1977, is a non-profit public interest legal organization with the mission of providing equal access to the justice system to the Asian and Pacific Islander communities in Santa Clara County, California. Since 1977, ALA has consistently fought against discriminatory laws impacting the community.

**Chinese for Affirmative Action**

Chinese for Affirmative Action ("CAA") was founded in 1969 to protect the civil and political rights of Chinese Americans and to advance multiracial democracy in the United States. Today, CAA is a progressive voice in and on behalf of the broader Asian American and Pacific Islander communities. CAA advocates for systemic change that protects immigrant rights, promotes language diversity, and remedies racial and social injustice. CAA has long fought against government scapegoating of Asian American communities because racial profiling, under the guise of national security, is unjust. For CAA, this work includes ending the U.S.

Department of Justice's practice of targeting Chinese Americans for espionage-related crimes by raising community awareness, providing support for affected individuals and their families, and building bridges and solidarity across all affected communities. CAA also opposes land laws which target specific communities and bars them from property ownership and has worked with other grassroots organizations to advocate against such bills in Texas and beyond.

### Japanese American Citizens League

The Japanese American Citizens League ("JACL") was founded in 1929 to combat discriminatory policies such as alien land laws targeting Japanese immigrants and Japanese Americans. JACL's ongoing mission is to secure and maintain the civil rights of Japanese Americans and all others who are victimized by injustice and bigotry.

### LatinoJustice PRLDEF

LatinoJustice uses and challenges laws to promote a more just and equitable society. For more than fifty years, LatinoJustice has litigated cases, and advanced policy initiatives to counteract marginalization due to intersecting characteristics, such as race, ethnicity, and immigration status, in areas such as housing, economic justice, and voting. Most recently, LatinoJustice and other amici filed a brief in *Francis v. Kings Park Manor, Inc.,* 992 F.3d 67 (2d Cir. 2021), explaining the legislative and historical backdrop of the Fair Housing Act, which proscribes

national origin and race-based discrimination in housing. LatinoJustice is acutely aware of the sordid history of exclusionary policies against foreign nationals—Mexicans and Asians alike—including dispossessing them of their property interests.

Amici are aware of the history of race and alienage discrimination in restricting property rights and the devastating impact such discrimination has on individuals, communities, and this nation. Amici are aware that immigration restrictions, alien land laws, and the incarceration of Japanese Americans during World War II have been previously upheld by courts under the pretext of national security. Amici have an interest in this litigation to ensure that this pained part of American history, particularly as it relates to alien land laws, does not recur.

## REASONS WHY THE MOTION SHOULD BE GRANTED

In this case, Plaintiffs seek to enjoin Florida's Conveyances to Foreign Entities Law ("Alien Land Law"), which severely restricts the rights of non-citizen and non-permanent resident persons, domiciled in China, to own real property in Florida. The Brief provides the Court with important historical context of alien land laws and their long and discredited history of promoting unlawful discrimination against persons of Asian descent. These historical examples, to which Florida's Alien Land Law bears chilling resemblance, inform the dangers of racially motivated and discriminatory laws that violate the Equal Protection and Due Process Clauses

of the United States Constitution. The Brief also provides additional authority that have rejected the use of national security as a guise to justify targeting persons of Asian descent. The matters set forth in the Brief are directly relevant to the issues before the Court and serve to assist the Court in resolving them. Accordingly, Amici respectfully request that they be permitted to file the Brief.

## CONCLUSION

For the foregoing reasons, the Court should grant leave to file the attached brief as amici curiae.

Respectfully submitted,

FOLEY HOAG LLP

*/s/ Madeleine K. Rodriguez*
Madeleine K. Rodriguez, Esq.
Bar No. 115796
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
mrodriguez@foleyhoag.com
(617) 832-1720

COUNSEL FOR AMICI CURIAE

Gabriel J. Chin*
UC Davis School of Law
400 Mrak Hall Dr.
Davis, CA 95616
gjchin@ucdavis.edu
(530) 752-3112

COUNSEL FOR AMICUS CURIAE AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES

Rose Cuison-Villazor*
Rutgers Law School
123 Washington Street
Newark, NJ 07102
rose.villazor@law.rutgers.edu
(973) 353-3159

COUNSEL FOR AMICUS CURIAE CENTER FOR IMMIGRATION LAW, POLICY AND JUSTICE

Robert Chang*
Ronald A. Peterson Law Clinic
Seattle University School of Law
901 12th Avenue
Seattle, WA 98122-1090
changro@seattleu.edu
(206) 398-4025

COUNSEL FOR AMICUS CURIAE FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY

*Motion to appear pro hac vice simultaneously filed

# RULE 7.1 CERTIFICATE OF COMPLIANCE

I, Madeleine K. Rodriguez, hereby certify that on June 12, 2023, an attorney from Foley Hoag LLP, Sahar M. Basaria, Esq., conferred with attorneys for Plaintiffs and Defendants regarding their positions on the submission of the foregoing amici curiae brief. Counsel for Plaintiffs consented. Counsel for Defendants Ivey, Simpson, and Fitzgerald also consented. I further certify that between June 12, 2023 and June 13, 2023, Ms. Basaria attempted to contact counsel for Defendants Larizza, Worrell, and Rundle. However, counsel have not yet appeared and efforts to contact them were unsuccessful. Ms. Basaria contacted counsel for Plaintiffs and Defendants to determine whether counsel for Defendants Larizza, Worrell, and Rundle had been identified. Ms. Basaria also emailed Defendant Larizza's office (larizza@sao7.org) to no avail. Ms. Basaria contacted the Miami State Attorney's office and was directed to send an email to 'LegalUnit@miamisao.com' to which she received no response. A representative from Defendant Worrell's office later advised Ms. Basaria that Defendant Worrell is not yet represented but that Defendant Worrell usually does not take a position on the filing of amicus briefs.

/s/ Madeleine K. Rodriguez
Madeleine K. Rodriguez, Esq.

**CERTIFICATE OF SERVICE**

I, Madeleine K. Rodriguez, hereby certify that on June 13, 2023, I caused the foregoing to be filed with the Clerk of Court for the United States District Court for the Northern District of Florida by using the CM/ECF system (NextGen). I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 13, 2023

*/s/ Madeleine K. Rodriguez*
Madeleine K. Rodriguez, Esq.