IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

YIFAN SHEN, *et al.*,            )
                                 )
            Plaintiffs,          )
                                 )
      v.                         )   Case No. 4:23-cv-208-AW-MAF
                                 )
WILTON SIMPSON, *et al.*,        )
                                 )
            Defendants.          )
_____  )

## STATEMENT OF INTEREST OF THE UNITED STATES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

The State of Florida recently enacted a statute that imposes new prohibitions on owning or purchasing land in the State. Among other provisions, Senate Bill 264 ("SB 264") prohibits individuals who are not U.S. citizens or permanent residents and whose "domicile" is in China, or other so-called "foreign countries of concern," from owning or purchasing real property. The United States respectfully submits this Statement of Interest under 28 U.S.C. § 517[1] to advise the Court of the United States' view that the provisions of SB 264 to be codified at Florida Statutes

_____

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

§§ 692.201–.205[2] violate the Fair Housing Act ("FHA") and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. These unlawful provisions will cause serious harm to people simply because of their national origin, contravene federal civil rights laws, undermine constitutional rights, and will not advance the State's purported goal of increasing public safety. Plaintiffs are likely to succeed on the merits of these claims challenging the provisions of SB 264 that restrict and prohibit land ownership. Accordingly, the United States supports Plaintiffs' motion to enjoin Defendants from implementing and enforcing these provisions.

## INTEREST OF THE UNITED STATES

This case implicates important federal interests. The United States Department of Justice has enforcement authority under the FHA. 42 U.S.C. §§ 3613(e), 3614. The United States thus has a strong interest in eradicating housing discrimination and ensuring the correct interpretation and application of the FHA. *See, e.g.*, Statement of Interest of the United States, *Louis v. SafeRent Solutions, LLC*, No. 22-CV-10800 (D. Mass. Jan. 9, 2023). In addition, the United States has a strong interest in matters that raise challenges of public importance under the Fourteenth Amendment of the United States Constitution. *See, e.g.*, Statement of

---

[2] *See* 2023 Fla. Laws ch. 2023-33, §§ 3-8, at 5–15 (to be codified at Fla. Stat. §§ 692.201–.205). These are the provisions of the bill that Plaintiffs seek to preliminarily enjoin. *See* Pls.' Corr. Emergency Mot. for Prelim. Inj., ECF No. 23, at 13 n.2.

Interest of the United States, *Poe v. Drummond*, No. 23-CV-00177 (N.D. Okla. June 9, 2023); United States' Statement of Interest, *Arnold v. Barber's Hill Indep. Sch. Dist.*, No. 4:20-CV-01802 (S.D. Tex. July 23, 2021).

## BACKGROUND

On May 8, 2023, Florida's Governor signed SB 264 into law. SB 264 imposes new restrictions on persons and entities from "foreign countries of concern," defined as China, Russia, Iran, North Korea, Cuba, Venezuela[3], and Syria. SB 264 prohibits governmental entities in Florida from contracting with entities of these countries or entering into any agreement that would grant economic incentives to these countries; and, relevant to this lawsuit, creates two new sets of restrictions on land ownership in Florida. *See* 2023 Fla. Laws ch. 2023-33 (to be codified at Fla. Stat. §§ 287.138, 408.810, 692.201–.205, and 836.05).[4]

The first set of land ownership restrictions prohibits "foreign principals" from owning or acquiring agricultural land or real property within ten miles of any "military installation" or "critical infrastructure facility" in Florida. *See id.* §§ 692.202, .203(1). "Foreign principals" include individuals whose "domicile[]" is in

---

[3] Specifically, the bill refers to "the Venezuelan regime of Nicolás Maduro." *See* Fla. Stat. § 287.138(1)(c). It does not define any criteria by which an individual is considered to be connected with that regime. *See generally id.*

[4] Citations to provisions of SB 264 are to the statutory sections where it is to be codified. Other citations to Florida laws are to the 2022 Florida Statutes.

a "foreign country of concern" and who are not U.S. citizens or lawful permanent residents. *See id.* §§ 287.138(1)(c), 692.201(4)(d). An exception permits foreign principals who are "natural person[s]" with a valid non-tourist visa or who have been granted asylum to purchase one residential real property if the property is less than two acres in size and not within five miles of a military installation. *Id.* § 692.203(4). Existing owners and new purchasers who fall within the bill's definition of "foreign principal" are required to register real property on or within ten miles of any military installation or critical infrastructure facility with Florida's Department of Economic Opportunity. *Id.* §§ 692.202(3)(a), .203(3)(a).

The second set of restrictions specifically prohibits the "[p]urchase or acquisition of real property by the People's Republic of China." *Id.* § 692.204. In addition to Chinese political and corporate entities, *see id.* §§ 692.204(1)(a)(1)–(3), (5), "[a]ny person who is domiciled in the People's Republic of China and who is not a citizen or lawful permanent resident of the United States" is prohibited from purchasing or owning any real property in the State, *id.* § 692.204(1)(a)(4). This prohibition has the same narrow two-acre residential property exception described above for "natural person[s]" with a valid non-tourist visa or who have been granted asylum, and the same requirement to register property with the State. *See id.* §§ 692.204(2), (4).

4

SB 264 imposes both civil and criminal penalties for violations of the land ownership provisions. Failure to comply with the restrictions and registration requirements may result in civil penalties, including a fine of $1,000 for each day that registration is delayed and forfeiture of any real property owned or acquired in violation of the statute. *Id.* §§ 692.202(3)(b), .202(6), .203(3)(b), .203(7), .204(4)(b), .204(7). Foreign principals or property sellers who violate the first set of restrictions may be charged with a second-degree misdemeanor, *id.* §§ 692.202(7)–(8), .203(8)–(9), punishable by up to 60 days' imprisonment and a $500 fine, *id.* §§ 775.082(4)(b), .083(1)(e). The Chinese-specific prohibitions impose more severe criminal sanctions: A person who "knowingly sells real property" to Chinese persons or entities in violation of the law commits a misdemeanor of the first degree, *id.* § 692.204(9), punishable by up to one year of imprisonment and a $1,000 fine, *id.* §§ 775.082(4)(a), .083(1)(d). Chinese purchasers of land in violation of the law commit a third-degree felony, *id.* § 692.204(8), punishable by up to five years in prison and a $5,000 fine, *id.* §§ 775.082(3)(e), .083(1)(c). If it is not enjoined, the law will go into effect on July 1, 2023.

On May 22, 2023, Plaintiffs Yifan Shen, Zhiming Xu, Xinxi Wang, Yongxin Liu, and Multi-Choice Realty, LLC filed a Complaint alleging claims under the FHA, the Fourteenth Amendment of the United States Constitution, and the

Supremacy Clause of Article VI of the United States Constitution. Compl., ECF No. 1. On June 5, 2023, Plaintiffs filed their First Amended Complaint. First Am. Compl., ECF No. 17. On June 6, 2023, Plaintiffs moved to enjoin Defendants from implementing and enforcing the portions of SB 264 to be codified at Florida Statutes §§ 692.201–.205, which establish new restrictions and prohibitions on land ownership. Pls.' Emergency Mot. for Prelim. Inj., ECF No. 21. Plaintiffs filed a corrected version of their motion on June 7, 2023. Pls.' Corr. Emergency Mot. for Prelim. Inj., ECF No. 23 ("Pls.' Mot.").

## ARGUMENT

A plaintiff seeking a preliminary injunction must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Because Plaintiffs are likely to succeed on the merits of their Fair Housing Act and Equal Protection Clause claims, the Court should enjoin the portions of SB 264 establishing restrictions and prohibitions on land ownership, *see* Fla. Stat. §§ 692.201–.205.[5]

---

[5] This Statement of Interest focuses only on the merits of Plaintiffs' Fair Housing Act and equal protection claims. The United States does not take a position at this time on the merits of any claims not addressed in this Statement of Interest.

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FAIR HOUSING ACT CLAIMS

"[T]he Fair Housing Act of 1968 . . . broadly prohibits discrimination in housing throughout the Nation." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979); *see* 42 U.S.C. § 3601 ("It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."). The FHA prohibits housing discrimination on the basis of race, color, religion, sex, familial status, disability, and national origin. 42 U.S.C. §§ 3604, 3605, 3606, 3617. The FHA makes it unlawful to "refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling[6] to any person" because of national origin. *Id.* § 3604(a). The FHA also prohibits discriminating "against any person in making available [residential real estate-related transactions], or in the terms or conditions of such a transaction" because of national origin, including "[t]he selling, brokering, or appraising of residential real property." *Id.* § 3605(a), (b)(2).

---

[6] The FHA defines "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b). SB 264 restricts and prohibits the purchase of "real property," defined as "land, buildings, fixtures, and all other improvements to land," Fla. Stat. § 692.201(6). The United States' FHA analysis applies to the subset of "real property" that falls within the FHA's definition of "dwelling," *i.e.*, buildings, structures, and land "designed or intended for occupancy as . . . a residence," 42 U.S.C. § 3602(b).

The FHA's provisions cover a wide range of discriminatory housing practices, including discrimination in the "terms, conditions, or privileges" of a sale or rental, *see* 42 U.S.C. § 3604(b), and discriminatory advertising, *see id.* § 3604(c); *see also, e.g.*, *Georgia State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 631–32 (11th Cir. 2019) ("the language of the FHA is broad and inclusive, prohibits a wide range of conduct, has a broad remedial purpose, and is written in decidedly far-reaching terms" (citation and internal quotation marks omitted)). The FHA also declares that "any law of a State . . . that purports to require or permit any action that would be a discriminatory housing practice under [the FHA] shall to that extent be invalid." 42 U.S.C. § 3615.

As addressed below, SB 264 violates Sections 3604 and 3605 of the FHA.[7] Moreover, because SB 264 is a state law that "require[s]" actions constituting "discriminatory housing practice[s]," the law is invalid under Section 3615 of the FHA.

### A. SB 264 violates Section 3604 and Section 3605 of the FHA.

The language of SB 264 facially discriminates on the basis of national origin. National origin "refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah*

---

[7] To the extent Plaintiffs' First Amended Complaint alleges additional violations of the FHA, the United States takes no position on the those claims in this statement, except to note that enactment of SB 264 may lead to additional FHA violations in the future. *See* note 10, *infra*.

*Mfg. Co.*, 414 U.S. 86, 88 (1973) (interpreting Title VII); *see also United States v. Kras*, 409 U.S. 434, 446 (1973) (using the term "nationality" synonymously with national origin). "The issue in a national origin case is whether the defendant is willing to deal with people from some countries but not others." Robert G. Schwemm, *Housing Discrimination Law and Litigation* § 11A:1 (2022).

SB 264 imposes property ownership restrictions on individuals who are (1) not citizens or permanent residents of the United States and (2) whose "domicile" is in a specific subset of countries—China, Russia, Iran, North Korea, Cuba, Venezuela, and Syria—with the most severe prohibitions and penalties imposed on individuals from China. *See* Fla. Stat. §§ 692.202, .203, .204. While the bill does not clearly lay out which individuals from these seven countries will be subject to SB 264's restrictions, prohibitions, and property registration requirements, nonimmigrant visa holders from these seven countries are likely to be the most affected.[8] *See* First Am. Compl. ¶¶ 60–62.

---

[8] SB 264 refers to individuals who are "domiciled" in a "country of concern." Fla. Stat. §§ 692.201(4)(d), .204(1)(a)(4) (China). Neither SB 264 nor Florida statutes provide a general definition of "domicile." Black's Law Dictionary defines "domicile" as person's "fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." *Domicile*, Black's Law Dictionary (11th ed. 2019). As Plaintiffs allege, individuals lawfully present in the United States on a nonimmigrant visa from a "country of concern" are likely to be considered domiciled in that country, because nonimmigrant visas are not a mechanism to establish permanent residency in the United States. *See* First Am. Compl. ¶ 61. Nonimmigrant visas may include visas for "tourism, medical treatment, business, temporary work, study, or other similar reasons." U.S. Customs & Border Protection,

Florida is drawing distinctions based on a person's nationality: nonimmigrant visa holders from countries that Florida does not deem to be "countries of concern" will not be subject to any of SB 264's restrictions on purchasing or owning real property. As an illustration, an individual from China with a valid H-1B visa, like Plaintiff Yifan Shen, will be subject to SB 264's prohibitions on owning real property in Florida and the associated civil and criminal penalties for violations of the statute. *See* Decl. of Yifan Shen, ECF No. 21-2 ("Shen Decl."), ¶¶ 7, 12, 18–20. An individual from China with a valid F-1 student visa, like Plaintiff Xinxi Wang, will be required to register the home that she currently owns with the State. *See* Decl. of Xinxi Wang, ECF No. 21-4 ("Wang Decl."), ¶¶ 15–16. By contrast, an individual from Japan with an identical immigration status as Ms. Shen or Ms. Wang would be able to purchase and own property in Florida free of these restrictions or prohibitions.[9]

---

*Requirements for Immigrant and Nonimmigrant Visas*, https://www.cbp.gov/travel/international-visitors/visa-waiver-program/requirements-immigrant-and-nonimmigrant-visas (Jan. 3, 2018).

[9] SB 264 does not present a case of discrimination solely on the basis of citizenship status, which calls for a more nuanced analysis as to whether there may be a violation of the FHA. *See, e.g.*, *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 432 (4th Cir. 2018) (the FHA prohibits discrimination on the basis of citizenship "when it has the purpose or unjustified effect of discriminating on the basis of national origin" (citation omitted)). Here, SB 264 does not affect all non-citizens, but rather singles out non-citizens from a small list of countries for less favorable treatment with regard to property-related transactions. In targeting individuals from a discrete list of countries, SB 264 discriminates on the basis of national origin.

The provisions of SB 264 that restrict land ownership by individuals domiciled in certain foreign nations violate sections 3604 and 3605 of the FHA. First, they violate Section 3604(a), which makes it unlawful to "refuse to sell . . . or otherwise make unavailable" a dwelling to any person based on national origin. SB 264's provisions prevent individuals from purchasing certain parcels of real property based only on their national origin, and they reduce the availability of housing for individuals from "foreign countries of concern." *See Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1542 n.17 (11th Cir. 1994) ("Courts have construed the phrase 'otherwise make unavailable or deny' in [42 U.S.C. § 3604(a)] to encompass actions by . . . government units that affected the availability of housing to minorities."). If SB 264 goes into effect, Plaintiffs Yifan Shen and Zhiming Xu will be prohibited from purchasing homes they have already signed contracts to acquire, solely based on their status as Chinese nationals. *See* Shen Decl. ¶¶ 18, 20; Decl. of Zhiming Xu, ECF No. 21-3 ("Xu Decl."), ¶ 18. Ms. Shen, who is Chinese and holds a valid H-1B visa, is prohibited by the Chinese-specific portions of SB 264 from purchasing her desired property because it appears to be within five miles of military sites. Shen Decl. ¶¶ 7, 18; *see* Fla. Stat. 692.204(2)(a). In addition, asylum seekers in Florida may be subject to SB 264's prohibitions, even though these non-U.S. citizens have expressed a clear intent not to return to their home country by requesting asylum in the United States. *See Juarrero v. McNayr*, 157

So. 2d 79, 80 (Fla. 1963). Mr. Xu, who is Chinese and has applied for political asylum, arguably is prohibited by SB 264 from purchasing his desired property because he already owns property in Florida. Xu Decl. ¶¶ 7, 18; *see* Fla. Stat. 692.204(3).

In addition to preventing individuals from "foreign countries of concern" from buying specific homes, SB 264's restrictions will serve to generally reduce the availability of housing by making large parts of Florida—which happen to be near military installations and critical infrastructure facilities—essentially off-limits to individuals based on their nationality. *See* First Am. Compl. ¶ 76.

For similar reasons, SB 264 violates Section 3605(a) of the FHA, which prohibits discrimination in real-estate-related transactions, including the selling of residential real property. If SB 264 goes into effect, it would prohibit sellers of real property, including Plaintiff Multi-Choice Realty, LLC, from selling specific parcels of real property—*e.g.*, parcels over two acres in size, or parcels near military installations or critical infrastructure facilities—to individuals based on national origin.[10] *See* Decl. of Jian Song, ECF No. 21-6 ("Song Decl."), ¶¶ 11, 13–14.

---

[10] SB 264 is also likely to cause violations of Sections 3604(b), (c), and (d) of the FHA once the law goes into effect. These sections prohibit discrimination in the "terms, conditions, or privileges" of the sale of a dwelling, 42 U.S.C. § 3604(b); the publication of any notice or advertisement indicating a preference based on national origin, *see id.* § 3604(c); and false representations about the availability of a dwelling based on national origin,

The Eleventh Circuit has not weighed in on what test should be used to determine when facially discriminatory policies may be justified under the FHA. *See Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1277 (11th Cir. 2022) (discussing three tests adopted by other circuits).[11] But regardless of the test applied, Defendants would fail to meet their burden to show that SB 264's facial discrimination is valid. Each of the tests adopted by other circuits—"the Equal Protection Clause rational basis review test," "a means-ends tailoring test," or examining whether the restriction "responds to legitimate safety concerns," *id.* (citation and internal quotation marks omitted)—would require Defendants to put forth a legitimate interest to justify SB 264's land ownership restrictions and prohibitions on people from China and other "countries of concern." Defendants cannot do so.

---

*see id.* § 3604(d). Because SB 264 establishes restrictions on acquiring real property based on national origin, sellers and providers of housing—including lay persons not trained in the complexities of immigration law—may discriminate against buyers based on national origin in their attempts to comply with the law. In fact, SB 264 may also lead sellers and housing providers to engage in profiling and other discriminatory practices in their attempts to determine whether potential buyers are encompassed by the law's restrictions.

[11] In *Sailboat Bend*, the Court did not choose among the tests utilized by other circuits to assess whether a defendant is justified in enacting a facially discriminatory policy because, in affirming the district court, the Court concluded that the challenged ordinance treated the plaintiffs— individuals with disabilities—"better than it treats those without disabilities." 46 F.4th at 1277. Here, there is no question that by singling out people from particular countries for exclusion from property rights that all others enjoy, Florida is treating Plaintiffs far worse than others.

Florida has yet to identify any legitimate connection between protecting the State and prohibiting individuals who simply come from "foreign countries of concern" from purchasing or owning real property. *See also* Pls.' Mot. at 21 n.7 (noting that "[i]n 2022, Chinese buyers were involved in 0.1 percent of all residential real estate purchases in Florida"). In a press release on May 8, 2023, accompanying the passage of SB 264, Florida's Governor described it as a bill to "counteract the malign influence of the Chinese Communist Party in the state of Florida." *See* Decl. of Keliang Zhu Ex. 21, ECF No. 21-28 ("Governor's May 8, 2023 Press Release"). Similarly, Florida's Commissioner of Agriculture stated: "Restricting China and other hostile foreign nations from controlling Florida's agricultural land and lands near critical infrastructure facilities protects our state, provides long-term stability, and preserves our economic freedom." *Id.* But even assuming these are legitimate interests, *see* Part II.A, *infra*, neither statement explains how prohibiting Plaintiffs and other similarly situated individuals from purchasing or owning real estate in Florida achieves these aims. None of the Plaintiffs are members of the Chinese government or the Chinese Communist Party, or otherwise representatives of their country of origin. *See* Shen Decl. ¶ 4; Xu Decl. ¶ 4; Wang Decl. ¶ 4; Decl. of Yongxin Liu, ECF No. 21-5 ("Liu Decl"),

¶ 4. Consequently, SB 264 is a facially discriminatory policy that violates Sections 3604(a) and 3605(a) the FHA.[12]

### B. SB 264 is invalid under Section 3615 of the FHA.

Under Section 3615 of the FHA, "any law of a State . . . that purports to require or permit any action that would be a discriminatory housing practice . . . shall to that extent be invalid." 42 U.S.C. § 3615. Thus, "the language of the [FHA] itself manifests a clear congressional intent to vitiate the application of any state law that would permit discrimination[.]" *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 70 (1st Cir. 2010); *see Warren v. Delvista Towers Condo. Ass'n, Inc.*, 49 F. Supp. 3d 1082, 1089 (S.D. Fla. 2014) (striking down county ordinance which, if enforced, would "stand[] as an obstacle to the objectives of Congress in enacting the FHA" (citation and internal quotation marks omitted)). By its express terms, SB 264 requires discriminatory housing practices that violate Section 3604 and Section 3605 of the FHA. *See* Part I.A,

---

[12] The application of SB 264 may also lead to discrimination against Asian and Asian-American buyers based on their race, regardless of whether their national origin is Chinese. Thus, SB 264 will "make[] housing options significantly more restrictive for members of a protected group than for persons outside that group." *See Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1274 (11th Cir. 2019) (internal citation omitted); *see also Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015); *Jackson*, 21 F.3d at 1543 (plaintiffs stated FHA claim based on race where challenged policy affected availability of housing for Black residents by excluding public housing from predominantly white census tracts); *Reyes*, 903 F.3d at 428 (plaintiffs stated FHA claim based on national origin where mobile home park required residents to provide documentation of legal status to renew lease).

*supra*. Additionally, the law will also require companies, such as Plaintiff Multi-Choice Realty, LLC, to violate the FHA because these companies will be required to refuse to conduct business with persons based on their national origin. *See* Song Decl. ¶¶ 11, 13–14. Consequently, SB 264 is invalid under Section 3615 of the FHA.

## II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment mandates that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A regulatory classification that "classifies by race, alienage, or national origin" is presumed invalid under the Equal Protection Clause. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). State laws employing such classifications, like SB 264, "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."[13] *Id.* SB 264 violates the Equal Protection Clause because it discriminates on the basis of alienage and national origin and is not narrowly tailored such that it survives strict scrutiny.

---

[13] State laws employing classifications based on alienage are subject to strict scrutiny, but "federal laws drawing distinctions between U.S. citizens and aliens—particularly in the context of war and national security—are generally permissible so long as they are rationally related to a legitimate governmental interest." *Al Bahlul v. United States*, 767 F.3d 1, 75 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring in part) (citing cases).

### A. SB 264 discriminates on the basis of alienage and national origin.

A regulatory classification based on nationality amounts to both an "alienage" classification and a "national origin" classification. A law classifies persons based on "alienage" if it either draws distinctions between U.S. citizens and non-U.S. citizens or draws distinctions among different classes of non-U.S. citizens. *See, e.g.*, *Nyquist v. Mauclet*, 432 U.S. 1, 8–9 (1977) (holding that a statute employed an alienage classification because it distinguished among non-U.S. citizens based on whether they had applied for citizenship or stated an intent to apply for citizenship); *Graham v. Richardson*, 403 U.S. 365, 370–76 (1971) (analyzing a residency requirement for welfare benefits as an alienage classification even though non-U.S. citizens who met the residency requirement would qualify for benefits); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419–20 (1948) (describing a statute that applied differently to non-U.S. citizens eligible for citizenship and non-U.S. citizens ineligible for citizenship as employing an alienage classification). A law classifies persons based on "national origin" if it draws distinctions based on characteristics related to background or ancestry, including nationality. *See e.g.*, *Kras*, 409 U.S. at 446 (using "nationality" synonymously with national origin); *Graham*, 403 U.S. at 372 (same); *Jean v. Nelson*, 472 U.S. 846, 856 (1985) (discussing "national origin" in connection with "nationality-based criteria").

The Equal Protection Clause imposes different restraints on the Federal Government than it does on States with respect to classifications based on nationality. The Supreme Court has explained that the federal government may, in certain circumstances, draw classifications based on alienage or nationality for purposes related to foreign policy or immigration policy. State governments, however, are not free to draw such classifications on their own. As the Supreme Court observed in *Plyler v. Doe*, 457 U.S. 202 (1982):

> With respect to the actions of the Federal Government, alienage classifications may be intimately related to the conduct of foreign policy, to the federal prerogative to control access to the United States, and to the plenary federal power to determine who has sufficiently manifested his allegiance to become a citizen of the Nation. No State may independently exercise a like power. But if the Federal Government has by uniform rule prescribed what it believes to be appropriate standards for the treatment of an alien subclass, the States may, of course, follow the federal direction.

*Id.* at 219 n.19 (citing *De Canas v. Bica*, 424 U.S. 351 (1976)).

The United States classifies individuals by nationality for various purposes, such as in the refugee context, where the United States identifies refugees of "special humanitarian concern" and subjects refugees of certain nationalities to additional or different security screening protocols. *See* Refugee Act of 1980, Pub. L. No. 96-212, § 101(b), 94 Stat. 102 (1980) (codified at 8 U.S.C. § 1521 note). But there is no federal policy that would justify the type of broad discrimination imposed on persons subject to SB 264, which goes so far as to

impose severe prohibitions on real property ownership on individuals such as lawfully present students and employees, without any evidence that such persons were operating on behalf of or even formally connected to the governments of any purported foreign countries of concern. In fact, federal policy is just the opposite— it mandates equal access to housing, regardless of national origin. *See* 42 U.S.C. § 3601 ("It is the policy of the United States to provide . . . for fair housing throughout the United States."). Thus, State policies such as SB 264 that discriminate on the basis of national origin or alienage with regard to real property transactions cannot be viewed as consistent with any "federal direction." *Cf. Plyler*, 457 U.S. at 225–26 (holding that a State policy denying public education to undocumented students could not be justified based on federal disapproval of undocumented students because the State policy did not "correspond[] to any identifiable congressional policy" and did not "operate harmoniously within the federal program").

Accordingly, SB 264's restrictions and prohibitions on land ownership are subject to strict scrutiny under the Fourteenth Amendment and are unlawful under the Equal Protection Clause unless the State could show they were narrowly tailored to serve a compelling government interest. *See, e.g.*, *Johnson v. California*, 543 U.S. 499, 505–506 (2005).

**B. SB 264 cannot survive strict scrutiny because it is not narrowly tailored to serve any compelling government interest.**

"Under strict scrutiny the means chosen to accomplish the State's asserted purpose must be specifically and narrowly framed to accomplish that purpose." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 (1986) (plurality opinion). SB 264 bears little specific connection to public safety and as such does not serve any compelling government interest. Even were the Court to accept the State's assertion that this law somehow protects public safety by counteracting the Chinese Communist Party's influence, *see* Governor's May 8, 2023 Press Release, Florida has not shown that its decision to severely restrict the ability of individuals from China and other specified countries to purchase real property, or its requirements that these individuals register their properties with the state, are narrowly tailored ways to address that concern. *See, e.g.*, *Hassan v. City of New York*, 804 F.3d 277, 306 (3d Cir. 2015) ("No matter how tempting it might be to do otherwise, we must apply the same rigorous standards even where national security is at stake."). The law is clear that the classification at issue must "fit with great[] precision" the compelling interest it seeks to uphold. *Wygant*, 476 U.S. at 280 n.6 (citation and internal quotation marks omitted). Florida cannot show that restricting or prohibiting individuals, particularly those who may have no connection whatsoever with the Chinese government or the Chinese Communist Party, from purchasing real estate contributes to public safety.

## CONCLUSION

For the foregoing reasons, the provisions of SB 264 that restrict and prohibit land ownership violate the Fair Housing Act and the Equal Protection Clause of the Fourteenth Amendment, and Plaintiffs are likely to succeed on the merits of those claims.

Dated: June 27, 2023

Respectfully submitted,

JASON R. COODY
United States Attorney
Northern District of Florida

STEVE BUTLER
Chief, Civil Division
United States Attorney's Office
Northern District of Florida

ROGER B. HANDBERG
United States Attorney
Middle District of Florida

LACY R. HARWELL, JR.
Chief, Civil Division
United States Attorney's Office
Middle District of Florida

MARKENZY LAPOINTE
United States Attorney
Southern District of Florida

DEXTER LEE
Chief, Civil Division
United States Attorney's Office
Southern District of Florida

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Acting Chief

/s/ Alisha Jarwala
MICHAEL S. MAURER
Deputy Chief
ALISHA JARWALA
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, DC 20530
Phone: (202) 538-1028
Fax: (202) 514-1116
Email: alisha.jarwala@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2023, I electronically filed the foregoing

with the Clerk of Court using the ECF system, which sent notification of such

filing to all counsel of record.

/s/ Alisha Jarwala
Alisha Jarwala