# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

YIFAN SHEN, *et al.*,

     *Plaintiffs*,

v.

WILTON SIMPSON, *et al.*,

     *Defendants*.

Case No. 4:23-cv-208-AW-MAF

**BRIEF OF AMICI CURIAE IDAHO, ARKANSAS, GEORGIA, INDIANA, MISSISSIPPI, MISSOURI, MONTANA, NEW HAMPSHIRE, NORTH DAKOTA, SOUTH CAROLINA, SOUTH DAKOTA, AND UTAH IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

RAÚL R. LABRADOR
*Attorney General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
Josh.Turner@ag.idaho.gov

THEODORE J. WOLD
*Solicitor General*

JOSHUA N. TURNER
*Deputy Solicitor General*

TIMOTHY J. LONGFIELD
*Deputy Attorney General*

i

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. IV

INTERESTS OF AMICI STATES ......................................................................... 1

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................. 3

I.    The Plaintiffs' Claims Fail Under Binding Supreme Court Precedent .................... 3

II.   SB 264 Does Not Discriminate Based on Alienage, Race, or National Origin ..... 6

III.  Federal Law Does Not Impliedly Preempt SB 264 ................................................ 10

IV.   SB 264 Addresses Important Issues of State Policy and Does So Lawfully ........ 12

CONCLUSION ............................................................................................... 15

## TABLE OF AUTHORITIES

### CASES

*Adams v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) .......................................................................... 9

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
  458 U.S. 592 (1982) ....................................................................................... 12

*Baldwin v. v. Fish and Game Comm'n of Mont.*,
  436 U.S. 371 (1978) ........................................................................... 10, 12, 13

*Bernal v. Fainter*,
  467 U.S. 216 (1984) ......................................................................................... 8

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993) ......................................................................................... 9

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) (1985) ............................................................................ 9

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ....................................................................................... 11

*Dunn v. Blumstein*,
  405 U.S. 330 (1972) ....................................................................................... 12

*Estrada v. Becker*,
  917 F.3d 1298 (11th Cir. 2019) .................................................................... 7, 8

*Evans v. Sec'y, Fla. Dep't of Corr.*,
  699 F.3d 1249 (11th Cir. 2012) ...................................................................... 6

*Frick v. Webb*,
  263 U.S. 326 (1923) ..................................................................................... 4, 6

*Geduldig v. Aiello*,
  417 U.S. 484 (1974) ......................................................................................... 9

*Graham v. Richardson*,
  403 U.S. 365 (1971) ..................................................................................... 4, 8

*Hauenstein v. Lynham,*
100 U.S. 483 (1879) ................................................................................................... 3

*LeClerc v. Webb,*
419 F.3d 405 (5th Cir. 2005) .................................................................................... 7

*Lessee of Pollard v. Hagan,*
3 How. 212 (1845) .................................................................................................... 5

*Martinez v. Bynum,*
461 U.S. 321 (1983) ................................................................................................ 13

*Mathews v. Diaz,*
426 U.S. 67 (1976) .................................................................................................... 8

*McBurney v. Young,*
569 U.S. 221 (2013) ................................................................................................ 12

*Medtronic, Inc. v. Lohr,*
518 U.S. 470 (1996) ................................................................................................ 10

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.,*
715 F.3d 1268 (11th Cir. 2013) ............................................................................. 11

*Oklahoma v. Castro-Huerta,*
142 S. Ct. 2486 (2022) .............................................................................................. 5

*Oyama v. California,*
332 U.S. 633 (1948) .................................................................................................. 5

*Phillips Petroleum Co. v. Mississippi,*
484 U.S. 469 (1988) .................................................................................................. 5

*Printz v. United States,*
521 U.S. 898 (1997) .................................................................................................. 5

*Sturgis v. Washington,*
414 U.S. 1057 (1973) .............................................................................................. 12

*Takahashi v. Fish & Game Comm'n,*
334 U.S. 410 (1948) .................................................................................................. 5

*Tenet v. Doe,*
  544 U.S. 1 (2005) ........................................................................................ 6

*Terrace v. Thompson,*
  263 U.S. 197 (1923) .............................................................................. 4, 5, 6

*Toll v. Moreno,*
  458 U.S. 1 (1982) ........................................................................................ 7

*Webb v. O'Brien,*
  263 U.S. 313 (1923) .................................................................................... 4

**STATUTES**

Fla. Stat. § 692.201 ...................................................................................... 4, 9

**OTHER AUTHORITIES**

Monsieur De Vattel, *The Law of Nations* ............................................................. 3

THE FEDERALIST No. 39 (James Madison) ......................................................... 5

**INTERESTS OF AMICI STATES**

The States of Idaho, Arkansas, Georgia, Indiana, Mississippi, Missouri, Montana, New Hampshire, North Dakota, South Carolina, South Dakota, and Utah have a strong interest in the right to safeguard the real property resources within their boundaries for the benefit of their citizens. The Plaintiffs' claims challenge that basic right. They seek to federalize and shackle state property law. Amici States strongly oppose this agenda.

Amici States must remain free to provide for the benefit and protection of their citizens. They are not required to ensure that foreign governments and principals have unfettered access to the lands within their borders. The U.S. Constitution does not say otherwise.

Accordingly, Amici States file this brief in support of the named Defendants.

**INTRODUCTION**

The people of Florida have determined that some of their most important land resources should be safeguarded from foreign principals of countries that have demonstrated hostility to their health and welfare. In so doing, they have acted well within their power. Real property law has always been the domain of states. And it is unexceptional that the people of a state get to decide how the land within their state is going to be used. Florida's limitations on unfriendly foreign governments and their actors are not unconstitutional or otherwise unlawful. They are a standard way that states have long protected their citizens.

The Plaintiffs try to discredit Florida's efforts by labeling them as "racist." *See* Dkt. #21 at 12. But Plaintiffs' demagoguery depends on caricatures of Florida SB 264, not the law as enacted. Page after page, the Plaintiffs' preliminary injunction motion advances their argument by rhetoric and straw man. A fair treatment of SB 264, however, shows that the Plaintiffs' claims lack any merit.

The Plaintiffs' claims also lack context. Florida is one of at least 24 states that restricts foreign ownership of land.[1] And numerous countries also limit foreign ownership of land.[2] Florida and these other states and countries are not driven by "racial

---

[1] *See* HB 379, Reg. Sess. (Ala. 2023); Ark. Code Ann. §§ 18-11-110, 18-701-705; Haw. Rev. Stat. §§ 171-65, 68; Idaho Code § 58-313; Ind. Code §§ 32-22-3-0.5–3-6, 32-22-4-1–2; Iowa Code §§ 9I.1–9I.12; Kan. Stat. §§ 17-5094, 17-7505; Ky. Stat. § 381.300(1); Minn. Stat. § 500.221; Miss. Code § 89-1-23; Mo. Rev. Stat. §§ 442.571, 442.586; SB 203, 68th Leg. (Mont. 2023); Neb. Code §§ 76-402–415; N.D. Code. Ann. §§ 47-10.1-01–06; Okla. Stat. § 60-121; Or. Rev. Stat. Ann. § 273.255; 68 Pa. Stat. Ann. §§ 28, 30, 31, & 41–47; S.C. Code Ann. §§ 27-13-30, 27-13-40; S.D. Codified L. §§ 43-2A-1–2A-7, 47-9A-1–9A-23; Tenn. Code Ann. §§ 66-2-301–306; Utah Code Ann. §§ 63L-101–63L-13-202; Va. Code Ann. §§ 55.1-507–509; Wis. Stat. Ann. §§ 710.01–02.

[2] *See, e.g.,* Canada, S.C. 2022, c. 10, s. 235, Prohibition on the Purchase of Residential Property by Non-Canadians Act; Mexico, Political Constitution of Mexico, Title I, Chapter I, Article 27; Brazil, Federal Law 5.709 *and* Decree 74.965 *and* the Constitution of the Federative Republic of Brazil, Title VII, Chapter III, Article 190; United Kingdom, the Economic Crime (Transparency and Enforcement) Act 2022; New Zealand, the Overseas Investment Amendment Act 2018, Part 2, Section 16 *and* Section 17; Poland, Art. 1 ust. 1 Ustawy z dnia 24 marca 1920 r. o nabywaniu nieruchomości przez *cudzoziemców (t.j.* Dz.U.2016.1061) (English translation: Article 1 sec. 1 of the Act of March 24, 1920 on the acquisition of real estate by foreigners (consolidated text, Journal of Laws of 2016 item 1061); Switzerland, Federal Law on the Acquisition of Real Estate by Persons Abroad of 16 December 1983.

animus" as the Plaintiffs charge. They are instead fulfilling their most basic state functions by exercising sovereignty over their soil.

It should be unsurprising, then, that the U.S. Constitution does not handcuff states in this area. Binding Supreme Court respects state sovereignty over real property ownership. As the Plaintiffs admit, their claims do not get off the ground unless this Court first overrules that precedent. *See* Dkt. #21 at 24. Moreover, even under the Plaintiffs' rubric, SB 264 does not violate the Equal Protection Clause. The law's "foreign principal" classification is not based on alienage, national origin, race, or any other suspect class. It is based on ties to totalitarianism and domicile. The law is thus subject to rational basis review, which it easily satisfies.

ARGUMENT

## I.  The Plaintiffs' Claims Fail Under Binding Supreme Court Precedent.

A state's right to control the land within its borders is a fundamental attribute of sovereignty. "The law of nations recognizes the liberty of every government to give to foreigners only such rights, touching immovable property within its territory, as it may see fit to concede." *Hauenstein v. Lynham*, 100 U.S. 483, 484 (1879) (citing Monsieur De Vattel, *The Law of Nations* bk. 2, ch. 8, § 114, at 177 (T. & J. W. Johnson & Co., Law Booksellers 1883)), https://tinyurl.com/anvnaacv. In the United States, that authority rests with "the States where the property is situated." *Id.* Based on these principles, the Supreme Court has repeatedly held that in the absence of any treaty provision to the contrary, "each state . . . has power to deny to aliens the right to own land within its

3

borders." *Terrace v. Thompson*, 263 U.S. 197, 217 (1923); *see also Frick v. Webb*, 263 U.S. 326, 333 (1923) ("The state has power . . . to deny to ineligible aliens permission to own, lease, use, or have the benefit of lands within its boarders for agricultural purposes."); *Webb v. O'Brien*, 263 U.S. 313, 322 (1923) ("[T]he state has power to deny to aliens the right to own land within its borders.") (citation omitted).

Florida exercised that prerogative when it passed SB 264. The challenged aspects of the law limit only "foreign principals" from acquiring agricultural land and real property near areas of special state concern. A "foreign principal" is not a citizen of the United States. Fla. Stat. § 692.201(4). Nor does it include anyone domiciled in the United States. *Id.* The law applies only to foreign governments, foreign officials, and non-citizen, non-domiciled foreign entities and persons. *Id.* In enacting SB 264, Florida has acted within its "wide discretion in determining its own public policy and what measures are necessary for its own protection and properly to promote the safety, peace and good order of its people." *See Terrace*, 263 U.S. at 217.

The Plaintiffs recognize that their claims are foreclosed in the face of these Supreme Court decisions. So they ask this Court to hold that "those cases do not govern here." Dkt. #21 at 24. But the Supreme Court has never overruled those cases, and the Plaintiffs err by asking this Court to be the first to do so.

The Plaintiffs are also incorrect that subsequent Supreme Court authority has impliedly overruled them. The Supreme Court has not only declined to do so when presented with the opportunity, *see, e.g., Graham v. Richardson*, 403 U.S. 365, 373 (1971),

4

*Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 422 (1948); *Oyama v. California*, 332 U.S. 633, 645 (1948), but it has also reaffirmed the underlying principles justifying its prior holdings. The Court just held that each state has "sovereignty and jurisdiction over all the territory within her limits." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2493 (2022) (quoting *Lessee of Pollard v. Hagan*, 3 How. 212, 228 (1845)). The Constitution did not change that but has left "the law of real property . . . to the individual States to develop and administer." *Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469, 484 (1988). This includes "broad powers" over "the devolution and ownership of land within their borders." *Takahashi*, 334 U.S. at 422. Sovereignty means sovereignty, and the Plaintiffs' claims ignore that "[a]lthough the States surrendered many of their powers to the new Federal Government, they retained 'a residuary and inviolable sovereignty'" over the land within their borders. *Printz v. United States*, 521 U.S. 898, 918-19 (1997) (quoting THE FEDERALIST No. 39, at 245 (James Madison)).

Under the Plaintiffs' reasoning, a state is powerless to prevent foreign governments and actors from acquiring "every foot of land within the state." *See Terrace*, 263 U.S. at 220-21. But states are not so limited. A state is rightly interested in "[t]he quality and allegiance of those who own, occupy and use the farm lands within its borders." *Id.* at 221. Florida's law protects its citizens' safety and welfare by limiting the power of foreign principals subject to hostile foreign governments from amassing some of the State's most important resources. These are matters of the "highest importance" that "affect the safety and power of the state itself." *Id.*

Contrary to the Plaintiffs' invitation, this Court cannot overrule Supreme Court precedent, "even" if the reasoning of those decisions "appears to have been rejected in later decisions." *See Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1263 (11th Cir. 2012). Lower courts must "follow the case which directly controls" and leave to the Supreme Court "the prerogative of overruling its own decisions." *Tenet v. Doe*, 544 U.S. 1, 10-11 (2005) (citation omitted). The Supreme Court's decisions in *Hauenstein*, *Terrace*, *Frick*, and *Webb* directly control this case, so the Plaintiffs' claims fail.

## II.  SB 264 Does Not Discriminate Based on Alienage, Race, or National Origin.

Even if this Court were writing on a blank slate, "modern" equal protection jurisprudence—as the Plaintiffs call it, *see* Dkt. #21 at 24—does not provide the Plaintiffs with any support. Their equal protection arguments—and accusations of racism—rest on a basic category mistake: SB 264's "foreign principal" classification is based on ties to totalitarianism and domicile, not alienage, race, or national origin.

The Plaintiffs contend that SB 264 classifies based on alienage because the law applies to persons who are (1) domiciled in a foreign country of concern and (2) not a citizen of the United States. Dkt. #21 at 19. They reference Plaintiff Wang as an example, arguing that her alienage is the sole basis for her classification because the law would not apply to her if she were a U.S. citizen albeit domiciled in China. *Id.* But that does not prove that Florida has classified her based on alienage. It just means that Florida is not classifying her based on her national origin.

6

Nor does SB 264 classify based on national origin. As the Plaintiffs acknowledge, only "foreign principals" from China, Cuba, Venezuela, Iran, Syria, Russia, and North Korea fall under the law's restrictions. The law is limited to persons domiciled in a country of concern. It does not apply to *anyone* from China, Cuba, Venezuela, Iran, Syria, Russia, or North Korea, so it is not classifying based on national origin.

The Plaintiffs' argument also misunderstands Supreme Court precedent in this area. The Supreme Court "has never held that *all* limitations on aliens are suspect" and trigger heightened scrutiny. *Estrada v. Becker*, 917 F.3d 1298, 1309 (11th Cir. 2019) (internal quotation marks and citation omitted). Rather, the Supreme Court has only ever "applied strict scrutiny review to a state law . . . involving resident aliens or permanent resident aliens." *Id.* (cleaned up); *see also LeClerc v. Webb*, 419 F.3d 405, 416 (5th Cir. 2005) ("The Court has never applied strict scrutiny review to a state law affecting any other alienage classifications."); *Toll v. Moreno*, 458 U.S. 1, 44 (1982) (Rehnquist, J., dissenting) ("In each case in which the court has tested state alienage classifications under the Equal Protection Clause, the question has been the extent to which the States could permissibly distinguish between citizens and permanent resident aliens.").

The Plaintiffs ignore the distinction between *resident* aliens and *nonresident* aliens. But that distinction matters, particularly in this Circuit. It is why the Eleventh Circuit refused to "extend the Supreme Court's decisions concerning resident aliens to different alien categories," like nonresident aliens. *Estrada*, 917 F.3d at 1310 (citation omitted). And it is why the Fifth Circuit likewise "decline[d] to extend the Supreme Court's

decisions concerning resident aliens to different alien categories." *LeClerc*, 419 F.3d at 419. In both *Estrada* and *LeClerc*, the laws at issue affected nonresident aliens and so were subject to rational basis review. *Estrada*, 917 F.3d at 1310; *LeClerc*, 419 F.3d at 421. The Equal Protection Clause did not invalidate Georgia's policy excluding nonresident aliens from its three most selective colleges, *Estrada*, 917 F.3d at 1310, nor Louisiana's law prohibiting nonresident aliens from sitting for the Louisiana Bar, *LeClerc*, 419 F.3d at 422. Neither does it invalidate Florida's law limiting the types of real property non-resident aliens can own.

The Supreme Court's decisions in *Bernal v. Fainter*, 467 U.S. 216 (1984), and *Graham v. Richardson*, 403 U.S. 365 (1971), do not say otherwise. The state law at issue in those cases discriminated against *all* aliens. In *Bernal*, Texas permitted only U.S. citizens to be public notaries, and in *Graham*, Arizona and Pennsylvania conditioned welfare benefits on U.S. citizenship or minimum residency requirements. In each case, the state law targeted aliens as a class. But SB 264 does not classify persons based on citizenship versus alienage. The law places no restrictions on aliens as a class—not even aliens from the countries of concern. And the fact the law distinguishes at some level between citizens and a subclass of noncitizens does not run afoul of the Equal Protection Clause. *See Mathews v. Diaz*, 426 U.S. 67, 78-79 (1976). States can recognize that "the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country" and enact laws that treat different groups differently. *Id.*

Binding precedent reinforces the point. In *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc), the court held that a school did not discriminate based on transgender status by requiring students to use bathrooms that matched their biological sex. *Id.* at 809. Transgender students fell within both categories—male and female bathrooms—the school sought to uphold. *Id.* So there was no equal protection violation. *Id.*

Likewise, in *Geduldig v. Aiello*, 417 U.S. 484 (1974), the Court held that a state insurance program that excluded coverage for certain pregnancy-related conditions did not classify on the basis of sex. *Id.* at 496-97 & n.20; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271 (1993) (reaffirming *Geduldig*'s reasoning). The insurance program created two groups—one that contained only females and one that contained both females and males. *Geduldig*, 417 U.S. at 496. Women were not discriminated against because members of that suspect classification were on both sides of the State's classification. *Id.*

The same is true here. SB 264 divides people into two groups: "foreign princi-pals" and everyone else. Fla. Stat. § 692.201(4)(d). Both groups contain aliens, and both groups contain persons from China, Cuba, Venezuela, Iran, Syria, Russia, and North Korea. There is thus a "lack of identity" between SB 264 and alienage, race, or national origin. *Geduldig*, 417 U.S. at 496–97 & n.20; *Adams*, 57 F. 4th at 809.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S.

432, 439 (1985). But it doesn't require states to treat residents of other states equally. *See, e.g., Baldwin*, 371 U.S. at 378–92. And it certainly doesn't require a state to treat its residents the same as nonresident foreigners, especially when it comes to real property.

## III.  Federal Law Does Not Impliedly Preempt SB 264.

The Plaintiffs close with a conflict-preemption argument. But their argument that the Committee for Foreign Investment in the United States and related legislation preempts SB 264 transforms a narrow and targeted federal action into a state-law bludgeon that would leave few traditional state property laws standing. Not even the United States—which would be expected to defend its interests on preemption grounds—is willing to get behind the Plaintiffs' preemption position.

The Plaintiffs' conflict preemption argument starts with a big burden. When a plaintiff claims that federal law preempts traditional areas of State law, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (citation omitted). Florida's real property restrictions are undoubtedly part of its historic police powers, so the Plaintiffs' preemption claim requires a demanding showing. *See id.*

Their argument that SB 264 frustrates the President's and CFIUS's congressionally granted national security prerogatives is far-fetched. At almost every turn, Florida is regulating in the large gaps Congress has left unaddressed. Congress did not attempt

to occupy the field when it comes to foreign ownership of land, so SB 264's regulation in this area remains an important subject of State police powers.

The Plaintiffs are also incorrect to compare this case to *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), and *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1274 (11th Cir. 2013). Both of those cases involved state laws that targeted specific foreign countries and conflicted with specific federal laws and policies regulating commerce with the targeted countries. That is not the case here. The Plaintiffs have identified no conflict between SB 264 and federal law. They've only pointed to areas of federal silence that SB 264 addresses. That is not a case for preemption—it is simply an example of everyday federalism.

Speaking of federalism, preemption here would effectively flip the assumption that federal law does not supersede traditional exercises of state power. *See Medtronic*, 518 U.S. at 485. Instead, the Plaintiffs' argument requires the Court to strike down State laws unless the State can show that Congress intended the State to retain its historic police powers in that area. *See* Dkt. #21 at 41-47.

Along these same lines, many real property laws in Florida and Amici States would fall victim to the Plaintiffs' sledgehammer approach to preemption. Under the Plaintiffs' logic, any real property law affecting foreign citizens—even those in the United States illegally—is preempted by the "federal scheme to address national security and foreign policy concerns relating to foreign investments, including real estate

transactions." *Id.* at 47. Implied preemption of laws exercising a State's historic police power takes much more.

## IV. SB 264 Addresses Important Issues of State Policy and Does So Lawfully.

The above confirms the bottom line point that federal law does not prevent Florida from exercising its police powers to protect land and real property for its residents. The "essential and patently unobjectionable purpose of state government" is "to serve the citizens of the State." *McBurney v. Young*, 569 U.S. 221, 236 (2013) (citation omitted). States thus have a critical sovereign interest in protecting "the health and well-being—both physical and economic—of [their] residents." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). To fulfill this primary duty, states necessarily can provide certain services and benefits to their residents but not to nonresidents. *See McBurney*, 569 U.S. at 236.

For instance, the Supreme Court has recognized that states can preserve fish and wild game for their residents by charging nonresidents more for hunting and fishing licenses—even if that means making it harder for nonresidents to access those resources. *See Baldwin v. v. Fish and Game Comm'n of Mont.*, 436 U.S. 371, 391 (1978). States can limit political participation to their residents, *Dunn v. Blumstein*, 405 U.S. 330 (1972); they can give residents preferential access to state institutions of higher education, *Sturgis v. Washington*, 414 U.S. 1057 (1973); they can give residents access to public records via FOIA requests, while denying that access to nonresidents, *McBurney* 569 U.S. at 236;

12

and they can limit public school eligibility to residents, *Martinez v. Bynum*, 461 U.S. 321, 329–31 (1983).

Each of these cases demonstrates that a State is not required always to "apply all its laws or [render] all its services equally to anyone, resident or nonresident, who may request it so to do." *Baldwin*, 436 U.S. at 383. If a state can limit the above resources to residents, it surely can limit land ownership based on domicile.

States have good reasons to restrict nonresident, foreign ownership of land. For example, regulation of absentee landowners or landowners who may reside outside of the State's jurisdiction is difficult. A law that targeted harmful conduct rather than ownership in the first instance would be unenforceable in many instances.

States also have a strong interest in ensuring that its residents have access to a stable and affordable real property market. In today's market, perhaps no resource is more scarce or valuable than land and real estate. Record-high home prices and record-low inventory have priced many Americans out of home ownership.[3] Buying farmland has also become increasingly difficult for Americans. Agricultural land buyers are

---

[3] AJ Horch, *Buying a home: Why it's harder for younger generations than their parents,* CNBC (Nov. 25, 2020, 10:30 AM EST), https://tinyurl.com/5n6ba844; Jung Hyun Choi et al., *The state of millennial homeownership*, Urban Institute (July 11, 2018), https://tinyurl.com/29y64zxm; Anna Bahney, *Why it's so hard to buy a home right now*, CNN Business (Apr. 13, 2022, 9:29 AM EDT), https://tinyurl.com/2s9mxy6v.

experiencing the same scarcity crisis as surging commodity prices and rising interest rates are making it almost impossible for young farmers to buy agricultural land.[4]

At the same time homes and farm land have become less affordable and less available, competition from wealthy foreign principals has worsened the problem.[5]  One national survey found that between April 2021 and March 2022, foreign buyers who live abroad "purchased $24.9 billion worth of existing homes, up 13.2% from the 12 months prior."[6]  Many of these buyers made *all-cash* purchases, making it more difficult for state residents who rely on financing to compete.[7]  Notably, Florida has "remained the top destination" for foreign buyers for fourteen consecutive years.[8]

In these difficult market conditions, states play a central role in preserving their citizens' well-being. One way that at least 24 states have elected to protect their citizens

---

[4] *See e.g.*, U.S. Dep't of Agriculture, *Land Values 2022 Summary* (Aug. 2022), https://tinyurl.com/5ctxnpdr; Linda Qiu, *Farmland Values Hit Records Highs, Pricing Out Farmers*, N.Y. Times (Nov. 13, 2022), https://tinyurl.com/mr35kejc; Katie Peikes, *Farmland prices soar, making it even harder for young farmers to break in and grow*, NPR (Aug. 23, 2022, 4:00 AM CDT), https://tinyurl.com/y4w26ykh; Adam Minter, *US Farmland Is a Hot Commodity.  That's Not Great for Farms*, Bloomberg (May 29, 2022, 8:00 AM EDT), https://tinyurl.com/ye23n7vn; Larry Van Tassell, *Profitability vs. Feasibility and the Paradox of Purchasing Farmland*, University of Nebraska - Lincoln (Oct. 21, 2015), https://tinyurl.com/4pddt8wt.

[5] Brenda Richardson, *They're Back! Wealthy Foreign Buyers Are Slowly Returning To The U.S. Housing Market*, Forbes (July 19, 2022, 1:07 AM EDT), https://tinyurl.com/3rxxfevr.

[6] *Id.* (citing Lawrence Yun et al., *2022 International Transactions in U.S. Residential Real Estate*, National Ass'n of Realtors (2022), https://tinyurl.com/33vc8uzt).

[7] *Id.*

[8] *Id.*

is by restricting nonresident land ownership in some way. These are perfectly legitimate laws that do not discriminate against people in violation of the Equal Protection Clause. They do nothing more than draw sensible distinctions between state residents and non-residents. The Court should therefore reject the Plaintiffs' argument, which, if adopted, would call the laws from all of these states into question.

## CONCLUSION

For the foregoing reasons, this Court should deny the Plaintiffs' emergency motion for a preliminary injunction.

Respectfully Submitted,

RAÚL R. LABRADOR
Attorney General
*State of Idaho*

THEODORE J. WOLD
Solicitor General

Date: July 7, 2023

*/s/ Joshua N. Turner*
Joshua N. Turner, (ID 12193)
*Deputy Solicitor General*
Timothy J. Longfield, (ID 12201)
*Deputy Attorney General*
Idaho Office of the Attorney General
700 W. Jefferson Street
Statehouse, Room 210
Boise, ID  83720
Telephone: (208) 334-2400
Josh.Turner@ag.idaho.gov
Timothy.Longfield@ag.idaho.gov

15

*Additional State Signatories*

TIM GRIFFIN
Attorney General
*State of Arkansas*

AUSTIN KNUDSEN
Attorney General
*State of Montana*

CHRISTOPHER M. CARR
Attorney General
*State of Georgia*

JOHN M. FORMELLA
Attorney General
*State of New Hampshire*

THEODORE E. ROKITA
Attorney General
*State of Indiana*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

LYNN FITCH
Attorney General
*State of Mississippi*

ALAN WILSON
Attorney General
*State of South Carolina*

ANDREW BAILEY
Attorney General
*State of Missouri*

MARTY J. JACKLEY
Attorney General
*State of South Dakota*

SEAN REYES
Attorney General
*State of Utah*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Florida, Tallahassee Division by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Joshua N. Turner*
Joshua N. Turner